**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**JORDAN A RIDDLE,**

                **Plaintiff,**

**v.**                                          **Case No:  6:19-cv-771-Orl-22LRH**

**ORANGE COUNTY SCHOOL BOARD,**

                **Defendant.**

_____

**ORDER**

This cause comes before the Court on Defendant Orange County School Board's Motion to Dismiss Plaintiff Jordan A. Riddle's Complaint. (Doc. 6). Plaintiff responded in opposition. (Doc. 14). The Motion is now ripe for review. For the foregoing reasons, the Court will **DENY** Defendant's Motion.

**I. BACKGROUND**

**A. Factual Background**

This is a Title IX action stemming from a sexual battery at a high school. Plaintiff is a student in the Orange County Public School System. (Doc. 1 ¶ 2). Defendant is in charge of the Orange County Public School System and is Title IX funded. (*Id.* ¶¶ 3 & 4).

In January 2017, Plaintiff, then a minor, was a tenth grade student at West Orange High School. (*Id.* ¶ 5). During this time, she was bullied and pressured into performing a non-consensual sexual act on two male students in the boys' restroom at West Orange High School. (*Id.* ¶ 6). The male students recorded the action without Plaintiff's knowledge on their cell phone and distributed the video at school. (*Id.*)

On or about January 31, 2017, Adrianne Hill, the Dean of Students at West Orange High School, learned about the video. (*Id.* ¶ 7). She knew about the sexual battery but it does not appear

that she knew who was involved. (*Id.*) Without Plaintiff's consent, Hill and Coach Ronald James, another school administrator, distributed the video around the school, including to a member of the girls' basketball team in an effort to identify Plaintiff. (*Id.* ¶ 8). Hill and James appear to have learned that Plaintiff was involved in the video as they called Plaintiff into the office and told her to write a statement. (*Id.* ¶ 9). While Plaintiff was writing the statement, Hill was standing over and telling her what to write. (*Id.*). Neither Hill nor James contacted the Plaintiff's parents before speaking with her and they failed to promptly notify the school resource officer or any law enforcement officer about her sexual battery. (*Id.* ¶ 10). The school resource officers were notified about the incident twenty-four hours after Plaintiff was suspended. (*Id.*) Although Plaintiff was required to write a statement, the male students were not asked to immediately write a statement and were not suspended until approximately twenty-four hours after Plaintiff. (*Id.* ¶ 11).

Ms. Thate, Defendant's employee, and Defendant's attorney Sarah Koren attempted to have the video destroyed while the Plaintiff and attorneys were in a meeting at the school to determine if expulsion was necessary. (*Id.* ¶ 12). The lead investigator from the Orange County Sherriff's Office happened to be at the school that day and intervened. (*Id.*) Ms. Thate attempted to destroy the video to protect the perpetuators and avoid an investigation of Title IX violations. (*Id.*) During a meeting, Koren stated in the presence of Plaintiff's attorney that she was not going to allow Plaintiff to ruin the future of the male students. (*Id.* ¶ 13). Plaintiff alleges that throughout the entire disciplinary process, Defendant's employees were deliberately indifferent to Plaintiff's rights to an equal opportunity for education in their attempt to protect the perpetuators over Plaintiff, as well as protecting themselves from a Title IX investigation. (*Id.* ¶ 14). Ultimately, the male students were suspended from school but allowed to participate in summers sports and to

return to school in August.[1] (*Id.* ¶ 15). However, Plaintiff was not allowed to return to school until October, despite her and her parents' pleading for her to be permitted to return in August. (*Id.*)

### B.  Procedural Background

#### 1.   The Previous

The present action is not the parties' first time in this Court. Initially, on December 17, 2018, Plaintiff filed a Title IX action in state court. *J.A.R. v. Orange Cty. Sch. Bd.*, No.2018-CA-013669-O (Fla. Cir. Ct. Jan. 28, 2019). On January 28, 2019, Defendant removed the case to the Middle District of Florida and it was assigned to the undersigned. *J.A.R. v. Orange Cty. Sch. Bd.*, No.6:19-cv-52, Doc. 1 (M.D. Fla. Jan. 28, 2019). On February 25, 2019, this Court dismissed Plaintiff's complaint and closed the case because Plaintiff failed to oppose Defendant's motion to dismiss. *J.A.R. v. Orange Cty. Sch. Bd.*, No.6:19-cv-52, Doc. 12 (M.D. Fla. Feb. 25, 2019).

#### 2.   The Present Action

On April 23, 2019, Plaintiff filed the present action. (Doc. 1). The case was assigned to Judge Byron. (Doc. 2). On May 20, 2019, Defendant filed a Motion to Dismiss Plaintiff's Complaint and a Motion For Reassignment, requesting that the case be reassigned to this Court. (Doc. 6). On May 29, 2019, Plaintiff responded.[2] (Doc. 14). On June 7, 2019, Judge Byron granted the Motion for Reassignment, transferring the case to this Court. (Doc. 17). However, he deferred ruling on the Motion to Dismiss. (*Id.*) In this Order, the Court focuses on the Motion to Dismiss.

### II. LEGAL STANDARD

For purposes of deciding a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the Court accepts as true the factual allegations in the complaint and

---

[1]The male students returned to Windermere High School. (Doc. 1 ¶ 15).

[2]Notably, Plaintiff did not object to the case being transferred to the undersigned. Defendant should have conferred on this matter as required by Local Rule 3.01(g) and avoided the waste of judicial resources. Defendant's Motion for Reassignment lacks a Local Rule 3.01(g) certification.

draws all reasonable inferences in the light most favorable to the plaintiff. *Randall v. Scott*, 610 F.3d 701, 705 (11th Cir. 2010). "Generally, under the Federal Rules of Civil Procedure, a complaint need only contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)(2)). However, the plaintiff's complaint must provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (citing *Twombly*, 550 U.S. at 556). Thus, the Court is not required to accept as true a legal conclusion merely because it is labeled a "factual allegation" in the complaint; it must also meet the threshold inquiry of facial plausibility. *Id.*

## III. DISCUSSION

"Title IX prohibits sex discrimination by recipients of federal education funding." *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 173 (2005). The statute provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). "Title IX was passed with two objectives in mind: 'to avoid the use of federal resources to support discriminatory practices,' and 'to provide individual citizens effective protection against those practices.'" *Cohen v. Brown University*, 101 F.3d 155, 165 (1st Cir. 1996), *cert. denied*, 520 U.S. 1186, 117 S.Ct. 1469, 137 L.Ed.2d 682 (1997) (quoting *Cannon v. University of Chicago*, 441 U.S. 677, 704, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979)).

Defendant argues that Plaintiff's Complaint should be dismissed because she fails to state a Title IX student-on-student claim. (Doc. 6). However, as shown in the Complaint and discussed

in Plaintiff's Response, she is not bringing a student-on-student claim but instead is alleging Title IX discrimination based on the investigation and discipline imposed by Defendant's employees. (Doc. 1 ¶ 16; Doc. 14 at 2). The Court recognizes that there are a variety of Title IX claims and Plaintiff does not clearly specify which one she is pursuing. *See Oliver v. Univ. of Texas Sw. Med. Sch.*, No. 3:18-CV-1549-B, 2019 WL 536376, at *17 (N.D. Tex. Feb. 11, 2019) (providing examples of Title IX claims) (citation omitted). Based on Plaintiff's allegations, for the purposes of this Order the Court construes Plaintiff's claim as a Title IX differential treatment claim.[3] "To establish a claim for differential treatment under Title IX a plaintiff must allege (1) that she was excluded from participation in, denied benefits of, or subjected to discrimination in an educational program; (2) that the exclusion was on the basis of sex; and (3) that the defendant receives federal financial assistance." *Milward v. Shaheen*, No. 6:15-CV-785-ORL-31TBS, 2017 WL 3336471, at *6 (M.D. Fla. Aug. 4, 2017) (citation and internal quotation marks omitted), *order vacated in part on other grounds on reconsideration*, 2017 WL 3662432 (M.D. Fla. Aug. 24, 2017). Defendant concedes that Plaintiff has met the third element so the Court will only address the first two elements. (Doc. 6 at 5).

As to the first element, Plaintiff satisfies this element by alleging that she was more severely punished than the male students for the same incident, despite her being the victim. While the male students were suspended from school, they were allowed to participate in summer sports and allowed to return to school in August. (Doc. 1 ¶ 15). However, Plaintiff was not permitted to return until October despite her and her parent's requests that she be allowed to return in August. (*Id.* ¶ 15). Moreover, Plaintiff was coerced into writing a statement with Hill telling her what to write (*Id.* ¶¶ 9 & 16) while school officials advised the boys to contact legal counsel

---

[3] Going forward, Plaintiff is not bound by this construction and must specify her claim.

and get their statements in order. (Doc. 1 ¶16). "[A] form of 'discrimination'. . .  is being subjected to differential treatment." *Jackson*, 544 U.S. at 174 (citations omitted).

As to the second element, Plaintiff satisfies this element by plausibly alleging facts that show the differential treatment she faced was based on her sex. As discussed *supra*, Plaintiff, a female, was punished more severely than the male perpetrators for the same incident despite her being the victim. These allegations "raise the specter of gender bias." *Rossley v. Drake Univ.*, 342 F. Supp. 3d 904, 934 (S.D. Iowa 2018) ("[T]he disputed facts themselves—whether an arguably similarly situated man and woman were treated differently—raise the specter of gender bias."). "Title IX bars the imposition of [school] discipline where gender is a motivating factor in the decision to discipline." *Yusuf v. Vassar Coll.*, 35 F.3d 709, 715 (2d Cir. 1994) (citation omitted). Moreover, the Complaint states examples of Defendant's employees showing favoritism toward the male students. For example, Defendant's attorney stating in a disciplinary meeting that she would not allow the Plaintiff to ruin the future of the male students. (Doc. 1 ¶ 13). Therefore, the Court finds that Plaintiff has alleged facts to put Defendant on notice of her claim and allow the Court to reasonably infer that Defendant's employee's actions were based on Plaintiff's sex. Thus, Defendant's Motion is denied. *See Gentry v. Mountain Home Sch. Dist.*, No. 3:17-CV-3008, 2017 WL 5972889 (W.D. Ark. Dec. 1, 2017) (finding that the male plaintiff stated a plausible Title IX claim when he was not permitted to return to his high school after completing his suspension and community service requirement but his female counterpart was based on the same incident).

## IV. CONCLUSION

Based on the foregoing, it is ordered as follows:

1.      Defendant's Motion to Dismiss (Doc. 6), filed on May 20, 2019, is **DENIED**.

2.      Defendant **SHALL FILE** an answer to the Complaint within fourteen days.

**DONE** and **ORDERED** in Chambers, in Orlando, Florida on July 2, 2019.

ANNE C. CONWAY
United States District Judge

Copies furnished to:

Counsel of Record
Unrepresented Parties